**CARPENTER v. WABASH RY. CO. et al.**

No. 11354.

Circuit Court of Appeals, Eighth Circuit.

May 13, 1939.

Rehearing Denied June 12, 1939.

Hyman G. Stein, of St. Louis, Mo. (Mark D. Eagleton and Roberts P. Elam, both of St. Louis, Mo., on the brief), for appellant.

Arthur B. Shepley, Jr., of St. Louis, Mo. (Allen C. Orrick, of St. Louis, Mo., on the brief), for appellee Chase Nat. Bank of City of New York, trustee.

Homer Hall, of St. Louis, Mo. (Nat S. Brown, of St. Louis, Mo., solicitor for Norman B. Pitcairn and Frank C. Nicodemus, Jr., receivers, on the brief), for appellee Wabash Ry. Co.

Hovey C. Clark, of New York City, and Thomas W. White and G. Carroll Stribling, both of St. Louis, Mo., for appellee Central Hanover Bank & Trust Co.

Before SANBORN, THOMAS, and VAN VALKENBURGH, Circuit Judges.

## VAN VALKENBURGH, Circuit Judge.

February 13, 1931, appellant herein, plaintiff below, recovered in the Circuit Court of the City of St. Louis, Missouri, a judgment against the Wabash Railway Company in the sum of $15,000 for injuries sustained in the course of his employment as an employee of said company. On appeal to the Supreme Court of Missouri this judgment was affirmed on condition that a remittitur of $5,000 be entered. 335 Mo. 130, 71 S.W.2d 1071. This was done and the judgment in the sum of $10,000 stands as of February 13, 1931. December 1, 1931, the T. J. Moss Tie Company, a Missouri Corporation, filed in the District Court of the United States for the Eastern District of Missouri its bill of complaint against the Wabash Railway Company, an Indiana Corporation, alleging that complainant was a general unsecured creditor of the Wabash; that the properties of the Railway Company were heavily mortgaged, that it was insolvent and unable to pay its debts, and praying the appointment of receivers. The railway company filed answer admitting the allegations of the bill and consenting to the appointment of receivers. On December 1, 1931, an order was entered appointing receivers and containing the usual injunctive provisions.

March 1, 1937, the Chase National Bank of the City of New York, Trustee under the Refunding and General Mortgage of the Wabash Railway Company dated January 1, 1925, by leave filed its bill for foreclosure of the lien of said mortgage, for the appointment of receivers, and for the impounding of the income from the mortgaged property. Thereupon the same persons theretofore appointed in the Tie Case were named as receivers in the Chase National Bank case, and the two causes were carried as consolidated cause in Equity, No. 12099.

November 1, 1937, the Central Hanover Bank and Trust Company of New York, as trustee under the first mortgage of the Wabash Railway Company, dated May 1, 1889, filed its bill, alleging default in the payment of interest on the bonds secured by its mortgage, praying for the appointment of receivers, the impounding of the rents, issues, and profits, and for other relief. The same persons were appointed as receivers and, November 4, 1937, an impounding order was entered, as prayed, in the consolidated causes. May 4, 1938, the said Central Hanover Bank and Trust Company filed its amended and supplemental bill praying for foreclosure of its lien, and it was thereupon ordered that the orders entered in said cause upon November 1, 1937, and November 4, 1937, be deemed to have been entered upon said amended and supplemental bill of complaint.

March 19, 1932, the district court appointed Forrest C. Donnell as Special Master to whom should be referred, "for his investigation, determination and report" all claims, etc., by which the claimant sought to recover any money or property from the receivers out of the estate in their hands. The Master was directed to proceed with all reasonable dispatch to hear and determine the matters presented and to report his findings to the court. The order of appointment contained this further language: "Before settling his report in any contested case the Special Master shall give to the parties in interest reasonable notice of the time when and the place where he will finally settle such report, and of the fact that they may appear before him and file such exceptions to the same as they may desire".

All persons were required to file their claims before the Special Master on or before July 1, 1932, and to make proof of the

amounts, and the lien and priority, if any, thereof. Accordingly, in June, 1932, appellant made a provisional filing of his claim, embodying a judgment for $15,000, then on appeal. This judgment was reduced to $10,000 by the Supreme Court of Missouri June 2, 1934. The hearing before the Special Master was held August 26, 1935. The receivers had filed answer admitting the rendition of the judgment, and denying any preference or priority. Mr. R. P. Elam, counsel for the claimant, then offered a certified copy of the judgment as finally modified, together with a statement of costs. Other counsel present were Theodore Bruere on behalf of claimant, Mr. F. D. Fauser appearing for the Wabash Company and the Receivers, and Mr. E. J. Barker for the Reconstruction Finance Corporation. After the presentation of the certified copy of the judgment had been received the Special Master asked: "Anything further to be offered in this matter?"

"Mr. Elam: Yes, I would like to have leave to submit at a future date the cost bill of the Circuit Court as soon as it has been prepared.

"The Special Master: Any objection to either of these offers, Mr. Fauser?

"Mr. Fauser: No, we agree further that the claim be allowed as set out in the judgment.

"The Special Master: It is the sum of $10,000 with interest thereon at the rate of six per cent per annum from the 13th day of February, 1931, to the date of the beginning of the receivership, is that correct?

"Mr. Fauser: Yes.

"The Special Master: That is to December 1, 1931?

"Mr. Fauser: Yes.

"Mr. Elam: And costs.

"The Special Master: I understand from you the cost bill will be submitted?

"Mr. Elam: I will submit it.

"The Special Master: Is there anything to be said by you, Mr. Barker, in that regard?

"Mr. Barker: No, sir, it is perfectly agreeable to us.

"The Special Master: Nothing on behalf of the Reconstruction Finance Corporation?

"Mr. Barker: No, our only interest is to see they are properly filed and judgment properly entered.

"(Thereupon the reporter marks said certified copy of judgment as 'Exhibit A,' and said Exhibit is attached to this record).

"The Special Master: On this 6th day of January, 1936, there being present Robert P. Elam, attorney for claimant, the Special Master determined that, pursuant to bill of costs, being attached and marked 'Exhibit B', hitherto presented to the Special Master by counsel for claimant in the above matter, the court costs hereinbefore referred to are hereby determined to be the sum of $104.15, wherefore, the Special Master determines that he shall report to the court,

"(a) That said claim to the extent of $10,000.00 principal, plus $104.15, court costs, plus interest on said principal amount of $10,000.00, at the rate of 6% per annum from February 13, 1931, to December 1, 1931, is correct and valid, and should be allowed in the aggregate of the said principal sum, court costs and interest, as a general unsecured claim, and that judgment should be entered thereon in the above entitled cause in favor of said claimant Peter J. Carpenter, and against defendant, Wabash Railway Company, in said aggregate amount;

"(b) That said claim is not entitled to any lien or to any priority over other general unsecured claims".

January 26, 1938, appellant filed in the district court his application for leave to file his petition for order terminating the receivership of the Wabash Railway Company, and dissolving the temporary restraining order and injunction. The petition presented therewith is very prolix and too long to be incorporated in full herein. The grounds for the relief asked are in substance the following:

That Kuhn, Loeb & Company, an investment banking organization of New York, is, and for many years has been, the banker for the Pennsylvania Railroad Company. That it also had and exercised control of the Wabash Railway Company and its financial policies and investments in 1926. That the Pennsylvania Railroad Company participated and connived with Kuhn, Loeb & Company in a course of conduct whereby the Wabash Railway Company purchased and acquired Lehigh Valley Railroad Company stock. In this manner the Pennsylvania Railroad Company acquired working control of the Wabash Railway Company and the Lehigh Valley Railroad Company, and Kuhn, Loeb &

Company collected and received, fees, commissions and profits in excess of $1,-000,000, and sold to the Wabash Railway Company, at great profit to itself, stocks owned by Kuhn, Loeb & Company. That this was accomplished by a conspiracy between this investment banking company and officers and directors of the Wabash Railway Company, thus alleged to be controlled by Kuhn, Loeb & Company, and the Pennsylvania Railroad Company. The loss accruing to the Wabash Company from these transactions is alleged to exceed $20,000,000. The present receivers are alleged to be former executives of the Pennsylvania Railroad, or one of its subsidiaries; and, for that reason, and for the further reason that they are said to have taken no action relative to the losses sustained by the Wabash Railway Company as aforesaid, they are charged to be improper persons to act as such receivers. It is further alleged that, since the receivers were appointed, there have been practically no proceedings of a constructive nature looking to a final disposition of the consolidated causes and the termination of the receivership. It is asserted that the claim of appellant is one entitled to priority over the liens of the mortgages and is entitled to present payment. The relief prayed is:

"(1) That the said Norman B. Pitcairn and Frank C. Nicodemus, Jr., and each and both of them, be discharged as receivers of Wabash Railway Company.

"(2) That the receivership of Wabash Railway Company as ordered in the above entitled Consolidated Cause and Constituent Causes be, by the order of this Honorable Court, terminated, and that the property of Wabash Railway Company be discharged from said receivership.

"(3) That the Restraining Order made and entered by this Honorable Court on December 1, 1931, as aforesaid, and ordering that all persons be restrained and enjoined from interfering with, attaching, levying upon, or in any manner whatsoever, disturbing any portion of the property and premises of Wabash Railway Company, for which said receivers were appointed, be dissolved.

"(4) That the Court, if it shall deem the same proper and best, afford unto Railway Company and its security holders the opportunity for a reasonable time not to exceed thirty (30) days, within which to institute proceedings under Section 77 of the National Bankruptcy Act [11 U.S.C.A. § 205], for the reorganization of Wabash Railway Company, before making an order terminating the receivership and discharging the property of Wabash Railway Company therefrom, effective".

The trial court, in passing upon the application for leave to file appellant's proposed petition, made findings of fact as hereinabove stated respecting the filings in the consolidated causes, and the proceedings in proof of appellant's claim before the master, and denied the application for the following stated reasons:

"(a) The petition which said petitioner seeks leave to file does not conform to the requirements of Equity Rule No. 37 [28 U.S.C.A. following section 723].

"(b) The status and classification of petitioner's claim as an unsecured claim which is not entitled to any lien or priority of payment over any other unsecured claim has heretofore been correctly and finally determined in this cause, and said petitioner is now estopped from asserting a claim for preference and priority of payment over the many other unsecured creditors whose claims have been filed and allowed in these proceedings;

"(c) The intervening petition which petitioner seeks leave to file states no cause of action in equity, and the granting of leave to file will merely serve to encumber and delay the orderly process of these cases toward a reorganization of the properties of the defendant Railway Company;

"(d) The dismissal, as to said petitioner, of the injunctive provisions of the several orders of this Court appointing the receivers in the several constituent causes of this consolidated cause, without a dismissal of the said several causes, would be of no aid or benefit to said petitioner, since all of the properties of the defendant Railway Company would remain in the exclusive custody and control of the Court's receivers".

The decree of the court, being upon the application of appellant for leave to file his proposed petition, our determination must in effect be limited to a consideration of two questions, (a) is the claim of appellant entitled to priority over the liens of the mortgages in suit and to payment as such; and, (b) has appellant the absolute right to file and be heard upon a petition praying, as relief, the preservation and enforcement of his alleged prior lien, the termination of the receivership, and the dis-

solution of the injunctive orders incidental thereto?

We consider first the status of appellant's claim. No Statute of the State of Missouri, and no decisions of its courts that have been brought to our attention or have been disclosed by our investigation provide or hold that claims for personal injuries by employees are entitled to priority as operating expenses. Barrie v. United Railways Co., 138 Mo.App. 557, 119 S.W. 1020, and Johnson v. United Railways Co., 247 Mo. 326, 152 S.W. 362, cited by appellant in support of his contention do not so hold, but base their conclusions upon other grounds. The decisions of this court have been consistently against this contention. Veatch et al. v. American Loan & Trust Company et al., 8 Cir., 79 F. 471; Pitcairn et al. v. Fisher, 8 Cir., 78 F.2d 649. It is true that in some jurisdictions claims for injuries to employees of railroads while engaged in the discharge of the duties of their employment, are entitled to priority of payment as operating expenses. The Wabash Railway Company is an Indiana corporation. It is the contention of appellant that such is the state of the law in Indiana and Ohio, in which states the Wabash Company owns lines of railroad; that, therefore, the law of priority which the laws of these states accord to personal injury claims against railroads should be made applicable to all the properties of the Wabash wherever situated. Conceding, without deciding, that the laws of Indiana and Ohio are as stated by appellant, that situation can have no effect upon the operation and effect of this Missouri judgment.

"A judgment rendered in one state or country does not operate extra-territorially so as to constitute a lien on lands in another state or country". 34 C.J. 586, Sec. 897; 34 C.J. 508, Sec. 807, and cases cited.

"A judgment of one state when sought to be enforced in another, is not entitled to any right of priority, privilege, or lien which it may enjoy in the state where rendered, but only that which the lex fori may give to it in the character of a foreign judgment". 34 C.J. 1130, Sec. 1604, and citations.

By sub-section (n) of Section 77 of the Bankruptcy Act as amended, 11 U.S.C. A. § 205 (n) claims for personal injuries to employees of a railroad corporation are entitled to priority. Central Hanover Bank & Trust Company, et al. v. Williams, et al., 8 Cir., 95 F.2d 210. But this subsection applies expressly to proceedings in bankruptcy, and at this stage, as charged in the proposed petition, this is an equity receivership. Illinois Central Railroad Company v. United States Fidelity & Guaranty Company, 5 Cir., 87 F.2d 121. But apart from whether judgments of this nature normally have, or may have, priority rights over antecedent mortgage liens, we believe appellant is foreclosed by this record from asserting such rights in this action. The court in its conclusions of law found that the status and classification of petitioner's claim had been correctly and finally determined as an unsecured claim and that the petitioner was estopped from asserting its preference and priority of payment. We think the record fully justifies this finding and conclusion.

It will be recalled that, in offering this claim for allowance, August 26, 1932, counsel for appellant made no reference to priority. The claim was expressly uncontested. Again, January 6, 1936, counsel for appellant being present, the Special Master announced specifically his determination respecting this claim, and the exact terms in which it should be finally reported to the court. To this announcement no exception was taken nor indicated. The claim throughout was treated as uncontested. That this was the common understanding of the language of the order appointing the Master is evident. The necessary notice of the time and place when and where the Master should finally settle his report and exceptions might be filed is restricted to contested cases. The order says: "Before settling his report in any contested case". The practice, in receivership proceedings involving a large number of creditors, to refer claims to a Master for determination is a common one. The court is ordinarily relieved from hearing uncontested cases. This accounts for the meticulous care of the Master in making explicit announcement of the terms of his report at the adjourned hearing in January, 1936. Counsel for claimant again was present and voiced no exceptions. For two full years thereafter no inquiry was made respecting the filing of this report. It is evident that the finding of the Special Master was accepted as final and conclusive, and the trial court rightly held appellant to be estopped from asserting a claim for preference and priority of payment

over the many other unsecured creditors whose claims have been filed and allowed in these proceedings.

Now, as to the absolute right of appellant to file and be heard upon his proposed petition. The basis of his intervention is his interest as a claimant against the receivership estate. His claim has already been filed, and its status determined. No reason appears why it may not, and will not, ultimately be disposed of in like manner as other claims of the same nature without the necessity of special intervention. In such case leave to intervene will not be granted to an individual creditor. Acme White Lead & Color Works v. Republic Motor Truck Co., D.C., 285 F. 88; Elkins v. First National Bank, 4 Cir., 43 F.2d 777, 779. The latter case is peculiarly in point because it deals with "an application on the part of the petitioners to have themselves made parties to the receivership proceeding in order that they might determine a question as to priority in the allowance and payment of claims." In the instant case a Special Master had been appointed to pass upon just such questions, and, as we have seen, had decided the issue without objection. This is not a case where a denial of the right to intervene would be a practical denial of certain relief to which the intervener is fairly entitled and which can be obtained only by intervention, as defined by this court in Credits Commutation Co. et al. v. United States, 8 Cir., 91 F. 570, 573.

One conclusion of law stated by the trial court as a ground for denying leave to file was that the petition sought to be filed did not conform to the requirements of Equity Rule No. 37, then in force. We are inclined to agree with the Chancellor in this conclusion, but we prefer to base our decision of this case upon broader grounds.

The trial court found from the record in this case and from the proceedings in the Consolidated Cause within its judicial knowledge that, pending ultimate disposition, the properties of the defendant Railway Company must remain in the custody and control of the court's receivers; and that the granting of leave to file, upon the basic grounds urged by the applicant, would serve merely to encumber and delay the orderly process toward a reorganization of the properties of the Railway Company. Compare Blumgart v. St. Louis-San Francisco Ry. Co., 8 Cir., 94 F.2d 712.

The Consolidated Cause in which the receivers have been appointed includes bills for foreclosure and impounding of income, rents, issues and profits under the provisions of prior and primary mortgages. There are no allegations and no claim that such mortgages are invalid, nor that their holders or trustees are parties to the practices charged to be fraudulent and illegal in the petition sought to be filed by appellant. It is apparent, as found by the trial court, that the dismissal of the injunctive orders and of those appointing the receivers would be of no aid to said petitioners without the dismissal of the several causes, and that to protect the prior lien holders in the rights and powers held and exercised by them, the properties of the defendant Railway Company must remain in the exclusive custody and control of the court's receivers. As indicated by conclusions of the trial court a reorganization is in process, and to the propriety of its terms when submitted objections may be entertained.

In cases involving the complexity of this Consolidated Cause large discretion is lodged in the district court. In exercising its discretion the court should consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. Rules of Civil Procedure, 24 (b), 28 U.S.C.A. following section 723c. In denying the application to intervene we cannot say that discretion has been abused. Appellant has disclosed no legal interest as a claimant that has not already been recognized, and may not be realized in the orderly process without the drastic disorganization contemplated and prayed in the petition sought to be filed.

The decree below accordingly is affirmed.